This is an appeal by protestants from a judgment of the Circuit Court of Montgomery County affirming an order of the Alabama Public Service Commission [hereinafter referred to as "APSC"] which issued a motor carrier certificate of public convenience and necessity to R.D. Wood for a dump truck operation. We affirm.
Wood applied to the APSC for issuance of a certificate [under the provisions of Tit. 48, §§ 301 (1), et seq., Code of Alabama 1940 (Recompiled 1958)] to authorize Wood's operations to engage in intrastate commerce over irregular routes as a common carrier by motor vehicle. Wood sought authority to employ his dump truck *Page 662 
vehicles in the transportation of various road materials between all points in eighteen specified, contiguous counties located in the geographical center of the state. Protests against Wood's application were filed by ten motor vehicle common carriers [hereinafter referred to as "protestants"] who had already obtained authorization similar to that sought by Wood.
A hearing on Wood's application was held before the APSC. Because a majority of the APSC was not present throughout the entire hearing,[1] an examiner's report and recommended order was filed. The examiner's report recommended that Wood's application be denied on the grounds that "the Applicant has not carried the burden placed on him by law to prove the present or future public convenience and necessity requires the proposed service, and that existing transportation service is not adequate to meet the reasonable public needs."
In an order dated January 16, 1975, the APSC "adopt[ed], in general, the summary of the evidence contained in the Examiner's Report and Recommended Order . . ." but declined to adopt the examiner's "resulting conclusions and findings therein." With respect to six of the eighteen counties for which authority was requested, the APSC found that the applicant is fit, willing and able to perform the proposed service and that the proposed service is required by present or future public convenience and necessity. Thus, Wood only got authority to serve six of the eighteen counties. With respect to the remaining twelve counties, the APSC found Wood's proposed service was not required by present or future public convenience and necessity, and his application was denied.
Seven of the original 10 protestants appealed the APSC's order to the Circuit Court of Montgomery County, where the APSC order was affirmed and costs taxed against the protestants. Six of the seven protestants, who appealed the APSC order to the circuit court, now appeal to this Court.
On this appeal, protestants maintain that there is no dispute as to the facts surrounding Wood's application for a certificate. What the protestants dispute is the APSC's conclusion that the applicant met the burden of proof imposed on him to affirmatively establish that he is entitled to certification. Case law requires the applicant for a certificate to affirmatively show that the certification requirements of Tit. 48, § 301 (9) have been met. See ServiceExpress, Inc. v. Baggett Transportation Co., 281 Ala. 666,207 So.2d 418 (1968). The protestants maintain that the APSC misapplied the law to the facts of this case when it determined that Wood met the burden of proof imposed upon him.
Under Tit. 48, § 82 of the 1940 Code, an APSC order may be set aside by the circuit court or by this Court only if "the commission erred to the prejudice of appellant's substantial rights in its application of the law; or, the order, decision or award was procured by fraud or was based on a finding of facts contrary to the substantial weight of the evidence."
Protestants voice no objection to the summary of facts that the APSC adopted (i.e., the summary set out in the hearing examiner's report) nor do they contend that the APSC order was "based on a finding of facts contrary to the substantial weight of the evidence." However, protestants do contend that their "substantial rights" were prejudiced by the APSC's application of the law to, what protestants refer to as, the "undisputed facts."
Consequently, a determination of the sole question here before us, i.e., whether there *Page 663 
was a misapplication of the law to the facts, depends upon whether the certification requirements of Tit. 48, § 301 (9), were met. That section provides that a certificate shall be issued, if, first, "the applicant is fit, willing, and able to properly perform the service proposed and to conform with the provisions of this article and requirements, rules and regulations of the commission thereunder," and, second, if "the proposed service . . . is or will be required by the present or future public convenience and necessity. . . ." The section further provides that in making its determination the Commission is to "consider" the following factors:
 "(1) Whether existing transportation service of all kinds is adequate to meet the reasonable public needs. (2) Financial ability of the applicant to furnish adequate, continuous and uninterrupted service the year round. (3) The advantages to the public of the proposed service."
Upon review, a presumption of correctness is ordinarily to be accorded to an order of the APSC. Alabama Power Co. v. APSC,278 Ala. 597, 179 So.2d 725 (1965) (construing Tit. 48, § 82, Code of Alabama of 1940). However, where the evidence has been heard ore tenus by a hearing examiner and not by the commission members themselves, the presumption of correctness normally accorded to the commission's order will instead be accorded to the examiner's findings of fact. APSC v. Perkins, 275 Ala. 1,151 So.2d 627 (1962).
The record in the instant case states that the evidence presented at the hearing was heard before a hearing examiner but also notes parenthetically that "[p]ortions of this case were heard also by Kenneth Hammond, President, and Juanita W. McDaniel, Associate Commissioner." From this statement in the record we gather that the hearing examiner was present throughout the entire proceedings, giving him first-hand opportunity to hear and weigh the testimony of all the witnesses. We also gather that the two commission members, who were present when "portions of the evidence" was presented, did not have this first-hand opportunity of hearing and weighingall the testimony.
However, here the APSC adopted the summary of facts set out in the hearing examiner's report. That summary of facts carries with it the presumption of correctness which is properly to be accorded to the conclusions of one who heard the evidence ore tenus. Furthermore, the protestants indicate in brief that they are in agreement with the hearing examiner's summary of facts.
Hence, the issue at hand becomes that of determining whether the APSC misapplied the law to the facts set out in the hearing examiner's summary of facts. In other words, do the conclusions of law set out in the APSC's order find support in the examiner's summary of facts?
In drawing their legal conclusions from the facts, the APSC had to consider the three factors specified by Tit. 48, § 301 (9). We find that the examiner's report includes some evidence supporting Wood's position with respect to all three factors. First, on the question of the applicant's financial ability to furnish adequate, continuous and uninterrupted year-long service, the summary of facts indicates that the applicant's debts are current, that he had a sizable gross income and net profit per month, and that he has 13 vehicles and 13 drivers. On the question of the adequacy of existing services, the summary of the facts indicates that existing services have not been adequate during critical periods for the industry and that even during noncritical periods shippers have relied heavily on Wood's services even though Wood does not presently have APSC authorization. On the question of the advantages to the public of the proposed services, the summary of the facts indicates that Wood's services have been *Page 664 
needed and used, and that his services have evidently been satisfactory to his customers.
Furthermore, we believe that the hearing examiner's summary of facts also includes support for the APSC's finding that the applicant is "fit, willing, and able" to perform the requested service and that present or future public convenience and necessity requires the proposed service. As noted above, the examiner's report supports a finding of the applicant's financial ability to adequately perform the service proposed, and also indicates that the applicant's services are presently in demand, evidently having been found satisfactory by his present customers. Additionally, the public's present reliance on Wood's services would appear to indicate that the applicant's services are in the interests of public convenience and necessity. We note here that the requirement of a showing of public "necessity" means not that the service must be absolutely indispensable, but instead means merely that the service must be reasonably necessary for the public good. APSCv. Higginbotham, 256 Ala. 621, 56 So.2d 401 (1952). We think the evidence summarized in the examiner's report shows the applicant's services to be "reasonably necessary."
Admittedly, there is evidence supporting the examiner's legal conclusions leading to his recommendation that the certificate be denied. However, although the ore tenus rule mandates that a presumption of correctness be accorded a hearing examiner's findings of fact when he alone has heard the evidence, the ore tenus rule does not also mandate a presumption of correctness in favor of the examiner's conclusions of law. Furthermore, we are not aware of any instance in which this Court has accorded such a presumption to the examiner's legal conclusions.
On the contrary, we are convinced of the soundness of the rule that "[c]ourts should not and do not overturn [APSC] findings save upon a clear conviction that their orders are wrong and unjust." North Alabama Motor Express v. Rookis,244 Ala. 137, 140, 12 So.2d 183, 185 (1943). We have not reached such a clear conviction in this case. Instead, we have found that the APSC's order is reasonably supported by the facts set out in the hearing examiner's report.
A three judge federal court reached an almost identical result on quite similar facts in Frozen Food Express, Inc. v.United States, 301 F. Supp. 1322 (D.C., 1969). There, action was brought to review a decision of the ICC granting twelve motor vehicle carrier applications. The hearing examiner had denied the applications. It was argued the ICC was bound by the examiner's conclusions. The court held that the ICC accepted his findings of facts, simply disagreeing with his conclusions of law based on those findings. The court affirmed the ICC's conclusions holding "there is substantial evidence of record" to support the same.
Having found that the APSC order is supported by legal evidence of substantial weight and therefore that there was no misapplication of law to the prejudice of the protestants' substantial rights, we affirm the judgment of the circuit court in its refusal to set aside the order of the APSC.
AFFIRMED.
HEFLIN, C.J., and FAULKNER, ALMON and EMBRY, JJ., concur.
[1] During a part of the hearing, two commissioners were present; during a part, only one commissioner was present. The examiner was present throughout. *Page 665